Thank you, Your Honors. Florence Brummer from Rosenquist & Associates, Phoenix, Arizona, on behalf of Mr. D'Angelo, the appellant in this case. If I may, I'd like to reserve... I notice that my timer's not ticking. Not yet? Okay. I'd also like to reserve two minutes, and I'm aware that I need to keep track of my own time. In this case, the conviction for first-degree murder against Mr. D'Angelo was obtained without the essential element of premeditation, and this was because of the erroneous jury instruction. The State concedes that the jury instruction was erroneous. The jury instruction was found to be erroneous very early on in the case, because at the appellate level, the Court of Appeals in Arizona determined that that jury instruction was erroneous, but then decided that, under Arizona law, that it was not fundamental error. And then the reason why they decided that, and then the State also agrees with this argument, is that they say that premeditation was not an issue at trial. It, of course, was an issue at trial. Wasn't this a case where it was either the defense decided to go for broke? It was either first-degree murder or self-defense and acquittal. They didn't argue second-degree murder or voluntary manslaughter. They didn't, but that doesn't mean that the State doesn't have to prove premeditation. In fact, what the State's argument is is that premeditation is conceded. That argument makes no sense, and the reason why is if premeditation is conceded... If there's an error as to premeditation and instruction, the next question is, is it structural error, or is it error which is subject to a showing of prejudice? What's your position on that? It's an error that is, it's a structural error, but it's subject to a showing of prejudice. It can't be both. It's subject to... Structural error, you don't have to show prejudice. It is subject to, well, going back to the poll... So it's the second. Yes, yes. Why is there any prejudice under the facts of this case? Isn't the evidence overwhelming that if there is no self-defense, your client premeditated? No. Okay. Tell me why. And this is very similar to the Polk case and then the Chambers case, which was decided thereafter. The evidence was not overwhelming to premeditation. And, in fact, we know that premeditation was not conceded because premeditation was a jury instruction that went before the jury. It wasn't as if the defense said, well, we don't need a jury instruction about premeditation. We don't need the jury to make this decision. You needed an instruction on all of the elements. Right. Absolutely. Well, it's been, and I guess it's pretty clear that premeditation is an element and that this instruction had a flaw. The problem is whether or not it made any difference. And this is a habeas review, is it not? Yes, it is. So we're not deciding whether or not the instruction was perfect, and we're not deciding in the first instance whether or not it was prejudicial. The State court found what with respect to prejudicial? The State found, if you're asking what the State found, they found that it was not prejudicial. That was the finding by the State. That it was not fundamental error. Yes, and that it was not fundamental error, yes. And so what do we do with that? Or what do you do with that? You have a pretty high burden to show that it was contrary to law. Sure. The reason why the State made that decision was because, and this was not an exact quote, but I'm paraphrasing from the Court of Appeals decision. They said premeditation was conceded, so we don't have prejudice. And, again, premeditation was not conceded. It was an issue that the jury had to determine. And what the State also argued. Well, but your defense had nothing to do with premeditation. Well, sure it did. It had to, because you can't have the, you know, I noticed that. Your defense was not that it was second-degree murder rather than first-degree murder. Right, that's true. That's true. But, still, the State had to prove the element of premeditation. And it's no, either, both the State and the defense, neither of them focused on the issue of premeditation. By using the words premeditation throughout argument, but the facts that they both used to attempt to win the case were talking about premeditation. The State had introduced facts that the defendant had mentioned days before that he might as well go ahead and kill the defendant. On contrary, and this is from Mr. Holden, the victim's testimony, on cross-examination, testimony was elicited from him that it happened real fast, the shooter was shaking real bad, that Holden could have killed someone with a pocket knife, he knew he could have killed someone with a pocket knife, he was physical with his fist, beat Gail many times, that the defendant had a gun and a knife, and then he shot back at, I'm sorry, that Mr. Holden, the victim, had a gun and a knife, and that he had shot back at Mr. D'Angelo. So the arguments regarding premeditation and the facts to support premeditation or not support premeditation were set out throughout the trial. And when you get to the issue of whether it was overwhelming, whether there was premeditation, which is, here's what the State says. They say, well, premeditation's not an issue, but we're going to tell you why it's overwhelming. So we have a contradictory argument. But on habeas review, our scope of review is limited to whether the State court decision that there was no violation of a Federal constitutional right was unreasonable. Why do you say it's unreasonable? It's unreasonable for the same reasons that it was in the Polk v. Sandstrom case and then following in the Chambers case, that the jury could not make a decision regarding premeditation because the jury instruction made that decision for them. It said actual reflection is not required, so the jury never has to make a decision about premeditation. So any error with respect to the instructions is always prejudicial? No, it is not. Because if there's a case where there is overwhelming evidence, then the court can say, well, it doesn't matter. Well, and the – okay. So your argument is that there was not overwhelming evidence? Yes, and there was not.  Well, is the – was the Arizona Court of Appeals mistaken when it said that, you know, premeditation really was not a contested issue because we're talking about whether it was or was not self-defense? They were mistaken because premeditation was an issue.  It was an issue that both the state and the defense submitted facts to the jury to make – help them make their decision on premeditation. Well, what about this – this other element, I'll say, that the Court of Appeals – State Court of Appeals depended on? It says the defense counsel argued in successfully opposing the state's request for a jury instruction on the lesser-included offense, right? That's correct, but – That – and that what? Would not require premeditation, would it? It would not require premeditation. But you don't want that. Or you, you know, I mean, the Petitioner didn't want that. But it also does not – Isn't that almost a concession that either it was first – you know, first degree or self-defense? It is not a concession because it is an element that the state has to prove premeditation. And whether or not there's a jury instruction for second degree or manslaughter, the state still has that burden. And when you tell the jury – Unless you give it away. But it wasn't given away. It was a jury instruction. Well, you don't think – you don't think the state court construed it as being given away by the objection to a second degree murder instruction as a lesser-included offense? The state court did construe it like that, and it was an error because it let the state – It was an error, but was it unreasonable? Yes, it was, because it let the state off the hook for proving an element of first degree murder. May I reserve my last minute? You may. Okay. Thank you. Good morning, Your Honors. Julie Dung, representing Respondent Apley in this matter. I'd like to start off by addressing Judge Bea's question that it was all or nothing. And, yes, the state did argue for a second degree, lesser-included – attempted second degree murder or lesser-included instruction. And the defendant was clear that he objected to that. So, again, yes, it was all or nothing. So that's why we argued that he conceded that there was premeditation in his argument of an all or nothing. Conceded there was either premeditation or self-defense. Exactly. Exactly. But even if you come to the conclusion that the premeditation was not a contested issue – that the premeditation was a contested issue and that he didn't concede it, the defendant or Petitioner still hasn't met his burden on habeas review of proving actual prejudice. And our argument is because there was overwhelming evidence here. And to get to the facts of the case, the defendant in this case had started dating the victim's girlfriend after the victim was in prison. And they dated for about eight or nine months. Well, when the girlfriend found out that her ex-boyfriend, Les Holden, the victim, was going to be released from prison, she decided to move back in with him. So the defendant was, you know, devastated. So it started this ball rolling, basically. And from the time that he found out that his girlfriend was going to move back in with the defendant, he started telling the girlfriend, Gail's best friend Susan, I should just kill him. And so for weeks before the shooting occurred, he said, I should just kill Les. And then closer to the time of the shooting, on the day of the shooting, he went over to the victim's house after he'd heard that the victim had beat up Gail, his love, who had left him, and confronted him and said, just tell me you didn't hit her. And Les, you know, being afraid because at that time the defendant had a gun, said, no, man, I didn't hit her, and walked away. Well, then he came back later after he picked up Gail to get some of Gail's things because Gail decided she wanted to move out. She didn't want to be with the victim anymore, Les Holden. And Les's mom, who Les lived with, said don't come back because, you know, Les is upset. He didn't heed that warning, and he came back a third time to defendant's house armed with two guns. Now, the facts are a little bit contradictory as far as what happened when he got to the house, but even his own best friend, Dave, defendant's best friend, testified that the defendant chased Les into the house. And at that point, Les ran down a hallway, and defendant stood in the front living room area right inside the door. And it was at that point that defendant said that he pulled out one of his guns, I guess this was Gail's gun, and it accidentally went off. That's when Les shot down the hallway until he'd emptied his gun, hoping to scare away defendant because he'd run into the house afraid of him. So he emptied his gun, and then that's when the defendant shot around the corner of the hallway, hitting Les at least three times. I'm not sure how many times he actually shot the gun. And at that point, he heard Les moaning. And even Les's own mom, who was cowering in the kitchen, said she heard Les moaning. So instead of retreating at that point out of the house that wasn't his, that he didn't have permission to be in, the defendant took the further steps. And this is where we would argue that there was premeditation starting weeks before when he said he should kill Les. But at a minimum, from the time he moved away from that front door to go check on Les, who he says he was afraid of, and then he saw his leg sticking out in the hallway, he couldn't even see him, but he heard him moaning and saw his leg sticking out in the hallway. He should have run at that point. But, no, he didn't. He still continued on down the hallway and then into the bedroom to check on him. That's where we argue that, at a minimum, there's definitely premeditation there. Because when he turned the corner and saw the guy laying on the floor in the bedroom, that's when he claims that Les held up a gun, which, according to Les, he'd already shot all of his bullets. But even if he had a knife, he was within one to five feet when he shot him three more times and then tried to shoot him in the face, but, oh, my gun's out of bullets. Oh, let me get my other gun out of my jacket, and then shot him twice more at close range. So, at a minimum, we would argue that there was definitely premeditation, overwhelming evidence of premeditation from the time he decided to leave the living room, and then turn into the bedroom to shoot Les five more times at close range. Did you try? You tried the case? No, I did not. What was the nature of the self-defense argument? According to the defendant, he claimed he went over there a third time to collect the rest of Gail's things, because Gail supposedly had bought a bunch of groceries and they didn't want them to spoil. And when he got there, according to him, that's when Les said, let's rock, meaning let's fight, and that's when Les ran into the house. Or as the defendant said, he was already in the house, and then he went to the front door and said, oh, can I come in? Highly unlikely. How many guns did he have? I'm sorry? How many guns did he have? He had two guns on him. It was his claim that he carried two guns with him all the time because he would go hiking in areas where there were a lot of critters, and his ex-wife, soon-to-be ex-wife, was dating a member of the Hells Angels. But one of the guns wasn't even his. It was Gail's, his girlfriend's. How many guns did Les have? That's also a contested issue. He had at least one gun that he admitted he shot until it was out of bullets down the hallway, hoping to scare the defendant away. But he also had a knife in his back pocket. But at the point when the defendant rounded the corner into the bedroom, he'd already been shot at least three times, had a broken leg, couldn't move. And like I said, even the mom. Les. Les is the victim. Even the mom said that, you know, she heard Les moaning. So the defendant can't deny that he heard him moaning and that when he went into that bedroom it was with every intent and actual reflection to kill him because he even testified at trial, yes, I shot him until I knew the threat was no longer there. That is premeditation is what we would argue. If there's no further questions. No. Thank you. Thank you. Your Honors, the State in its argument conceded that there was contradictory facts regarding what happened in the shooting. And that contradiction is whether Mr. Holden was shooting first or it was Mr. D'Angelo shooting first. And that's the issue. The premeditation should have been decided by the jury and not by the State on the facts that they wish to choose and put before the court. There was a lengthy trial, contradictory facts. And regarding the question regarding the nature of self-defense, Les Holden shot at Mr. D'Angelo and shot again. And because Mr. Holden kept shooting, my client shot until one gun was empty and then shot with the other gun. And there was also testimony that Mr. Holden may have had two guns and there was testimony that he had the knife in his hand at some point. Defendant does not deny that he shot Mr. Holden, but it was not premeditated and that issue should have been decided by the jury. Thank you. Thank you. Case to start is submitted for decision.
judges: Schroeder, Tashima, Bea